**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JULIO CESAR OVALLE, | § | |
| | § | |
| *Plaintiff* | § | |
| v. | § | |
| | § | CIVIL ACTION NO._____ |
| UNITED STATES of AMERICA, | § | |
| DOE C.B.P. AGENTS 1-10, & | § | |
| DOE I.C.E. AGENTS 1-10 | § | |
| | § | |
| *Defendant* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW PLAINTIFF, JULIO CESAR OVALLE (hereinafter referred to as "Plaintiff" or "Mr. Ovalle"), complaining of Defendant UNITED STATES, specifically United States Customs & Border Protection (hereinafter referred to as "C.B.P."), United States Immigration and Customs Enforcement (I.C.E.), and the Department of Homeland Security (hereinafter referred to as "D.H.S."), Defendant DOE C.B.P. AGENTS 1-10, and Defendant DOE I.C.E. AGENTS 1-10 (collectively referred to as "Defendants DOE AGENTS") and for a cause of action would show the Court and/or the jury the following:

### PARTIES

1.      Plaintiff JULIO CESAR OVALLE is a native born United States citizen, born in California who currently resides in San Antonio, Bexar County, Texas.

2.      Defendant UNITED STATES of AMERICA, ("Defendant" or "United States") is the duly constituted and sovereign government of the United States of America. The Defendant U.S.A. may be sued under the FTCA, under which the United States has waived its sovereign immunity for claims of false imprisonment, intentional infliction or emotional distress, and negligence arising from the wrongful acts or omissions of its agents, including U.S.B.P. agents, U.S.I.C.E. agents, and U.S.D.H.S. agents, acting within the scope of their employment. Defendant may be served with process by serving the following: William P. Barr, Attorney General of the United States, through the Civil Process Clerk at the U. S. Department of Justice, 950 Pennsylvania Avenue, NW,

Washington D.C. 20530.

3.     Defendants DOE C.B.P. AGENTS 1-10, inclusive, are sued herein under fictitious names because their true names, capacities, and/or degree of responsibility for the facts alleged herein are unknown to Plaintiff at this time.  When Plaintiff ascertains this information, he will amend this Complaint accordingly.

4.     Defendants DOE I.C.E. AGENTS 1-10, inclusive, are sued herein under fictitious names because their true names, capacities, and/or degree of responsibility for the facts alleged herein are unknown to Plaintiff at this time.  When Plaintiff ascertains this information, he will amend this Complaint accordingly.

## JURISDICTION

5.      Suit is brought for money damages for personal and mental injuries caused by the negligent or wrongful act(s) or omission(s) of Defendants DOE C.B.P. AGENTS 1-10 and Defendants DOE I.C.E. AGENTS 1-10 as employees of the Defendant UNITED STATES OF AMERICA,  while acting within the scope of his, her, or their office or employment and this Court has jurisdiction over this cause of action pursuant to 28 U.S.C. §§ 1331, the Fourth and Fifth Amendments to the United States Constitution, and the Federal Tort Claims Act. On September 17, 2018, Plaintiff submitted an Administrative Claim on Form SF 95, Claim for Damages to the United States Department of Homeland Security. On March 15, 2019, Defendant responded with a letter requesting Plaintiff to supplement original claim. On June 11, 2019 Plaintiff supplemented accordingly. Defendant has failed to respond for more than 6 months and as a result is deemed a final denial of the claim, pursuant to 28 U. S. C. § 2675 (a); 28 C.F.R. §14.9.

## VENUE

6.     A substantial part of the events or omissions giving rise to the claim occurred in the District and Venue is proper in this District pursuant to 28 U. S. C. § 1391 (b)(2); 28 U.S.C. 1346 (b).

7.     At all relevant times herein, the United States Customs and Border Protection and United States Immigration and Customs Enforcement are each a "federal agency" within the meaning of 28 U.S.C. §2671.

### STATEMENT OF FACTS

8.     Julio Cesar Ovalle is a twenty-five-year-old United States citizen, born in Los Angeles, California on September 2, 1994.  *See* Exhibit A, Birth Certificate of Julio Cesar Ovalle.  Mr. Ovalle's mother was born in the United States and his father has been a legal resident of the United States for over thirty years. Mr. Ovalle struggles with the English language and has a history of slight mental health issues and a learning disability, as documented during his attendance at Stevens High School in San Antonio, Texas, where he attended through the eleventh grade. Further, after a disturbance at Mr. Ovalle's family home in August 2015, documentation of the San Antonio Police Department for Mr. Ovalle, under the same name, birthdate, and Texas identification card number, specifically stated that Mr. Ovalle was reported to have a mental illness.

9.     On Monday, June 11, 2018, while walking on a public street, Mr. Ovalle was detained by Defendant DOE C.B.P. AGENT 1-10. At all relevant times, Defendants DOE C.B.P. AGENT 1-10 were "law enforcement officers" within the meaning of 28 U.S.C. Section 2680 (h). At the time of his detainer, Mr. Ovalle had a Texas identification card on his person with a San Antonio, Texas address and date of birth, which provided his information. *See* Exhibit B, Copy of Texas Identification Card of Julio Cesar Ovalle.  Pursuant to Texas Transportation Code Sec. 521.101(d-1)(1) and (2), Mr. Ovalle's Texas identification card confirmed to the agent that Mr. Ovalle was a U.S. citizen; or at the very least, had legal status to obtain a valid Texas I.D. *Id.*

10.    In violation of the United States Constitution and federal law that prohibits the detainer of a United State citizen, Defendant DOE C.B.P. AGENT 1-10 arrested and detained Mr. Ovalle and took him to the Cotulla, Texas I.C.E. detention facility where he was falsely imprisoned by

Defendant DOE I.C.E. AGENT 1-10.[1] Defendant DOE I.C.E. AGENT 1-10 then started to initiate deportation proceedings without allowing Mr. Ovalle to see a judge and without conducting an investigation into Mr. Ovalle's claims of citizenship by birth, in violation of the United States Constitution, federal law, and official policies of the Defendant.[2]

11.     While in the C.B.P. vehicle, on their way to the Cotulla, Texas station, Defendant DOE C.B.P. AGENT 1-10 repeatedly asked Plaintiff "where he crossed" the border and "where was he from." Mr. Ovalle repeatedly told him he was a U.S. citizen and that he was born in the United States and that he had a passport he could show him if he was allowed to get it from his home, which was less than five miles from where he was detained. However, Defendant DOE C.B.P. AGENT 1-10 ignored Mr. Ovalle's claims and instead laughed at him.  Furthermore, Defendant DOE C.B.P. AGENT 1-10 who processed Mr. Ovalle while he was in Cotulla either willfully and intentionally ignored Mr. Ovalle's US Citizenship claims and the validity of his identification card, or they negligently never checked to verify his legal status in the United States, which would have shown that he was a U.S. citizen by birth. Lastly, Defendant DOE C.B.P. AGENT 1-10 refused his plea to be allowed to make a call to his father to bring his passport so he could be released.

12.     Mr. Ovalle was wrongfully detained overnight at the U.S.B.P. Station in Cotulla and then was transferred to Laredo, Texas on Tuesday, June 12, 2018. The deportation proceedings were immediately initiated by Defendant DOE I.C.E. AGENT 1-10, without being allowed to see a judge pursuant to 8 U.S.C. 1229(a). While in detention and despite Plaintiff's mental disability that was documented within records available to Defendants, Plaintiff was told to sign a series of documents

---

[1] *See* U.S. Immigration and Customs Enforcement Policy 16001.2, Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE, found at
https://www.ice.gov/sites/default/files/documents/Document/2017/16001.2.pdf
[2] *Id*; *see also* 8 USCS §§ 1226, 1227, 1229, 1229a, 1229c, 1231 et al.

without explanation as to their contents or effect and without being afforded counsel in violation of the United States Constitution, federal law, and official policy of the Defendants.[3]

13.     Plaintiff repeatedly stated to Defendant DOE I.C.E. AGENT 1-10 that he spoke very little English, could not read in English, and did not understand the documents that he was being forced to sign. Plaintiff did not graduate from high school and was placed in special education classes while in high school in San Antonio. Because of his mental condition and his inability to speak or read English, Plaintiff, to this day, does not comprehend what the significance, if any, was of the documents he was forced to sign while in the custody of Defendant U.S.A. and its agents, including Defendant DOE I.C.E. AGENT 1-10 and Defendant DOE C.B.P. AGENT 1-10.

14.     On this same day, Tuesday, June 12, 2018, Defendant U.S.A., though the acts and omissions of Defendant DOE I.C.E. AGENT 1-10, deported Plaintiff to Nuevo Laredo, Tamaulipas, Mexico, forcing him to walk across the border with other deportees. Mr. Ovalle's pleas that he was a U.S. citizen were willfully ignored again and no investigation was conducted that would have revealed that Mr. Ovalle had a birth certificate, passport, and Texas identification card, all with the same name and date of birth. *See* Exhibit C, Passport of Julio Cesar Ovalle.  In doing so, Defendants violated 8 C.F.R. § 235.3(b)(5), which required Mr. Ovalle to be removed from expedited removal proceedings upon his claims of citizenship, and violated the United States Constitution, federal law, and official policies of Defendants.[4]

15.     Mr. Ovalle was deported without ever seeing a Judge, making a telephone call, having access to an attorney, or being given any opportunity to substantiate his citizenship, even beyond the Texas

---

[3] *See* Section 504 of the Rehabilitation Act; *see also* 8 U.S.C. 1229a(b)(4)(B).

[4] *See supra*; *see also* 8 C.F.R. § 235.3(b)(5)("When an alien whose status has not been verified but who is claiming under oath or under penalty of perjury to be a lawful permanent resident, refugee, asylee, or U.S. citizen is ordered removed pursuant to section 235(b)(1) of the Act, the case will be referred to an immigration judge for review of the expedited removal order . . . . If the immigration judge determines that the alien . . . is a U.S. citizen . . . the immigration judge will terminate proceedings and vacate the expedited removal order.")

identification card he had on his person.[5] Upon his deportation, his phone was returned to him and he was able to call his father from the Mexican side of the border. This was the first call Plaintiff was able to make to any family member since the time he was taken into custody by DOE C.B.P. AGENT 1-10 on the morning of Monday, June 11. His father told him to wait at the Mexican Immigration Center and that he would start the drive from San Antonio to Nuevo Laredo immediately with his passport and birth certificate. As Mr. Ovalle was waiting for his father, a truck approached his location with members from a Mexican cartel. These cartel members abducted Plaintiff while he was waiting outside the Mexican Immigration Center and took him to a house outside of Nuevo Laredo, where Mr. Ovalle was held for ransom.

16.     The cartel called Mr. Ovalle's family and left recorded messages demanding ransom money be paid in exchange for Mr. Ovalle's life. After receiving these messages, his father went to the Federal Bureau of Investigation (F.B.I.) in Laredo, Texas with Plaintiff's birth certificate and passport and told them what happened. The F.B.I. communicated with its Mexican counterparts and started helping Mr. Ovalle's family. By Friday of that week, with the assistance of the F.B.I., the cartel that abducted Plaintiff released him at the International Bridge, after having physically and mentally abused him. When he was being transferred to be released, Plaintiff overheard one of the cartel members state to the other, "this guy's a U.S. citizen and the F.B.I. and the American Consulate are looking for him."

17.     Based on the information so quickly and easily given by Mr. Ovalle's family to the F.B.I., they determined that Mr. Ovalle was a U.S. citizen and belonged in the United States without even conducting an investigation. Thankfully, and because the F.B.I. immediately recognized the wrong committed and intervened, Mr. Ovalle was returned within the week—alive but damaged. Had Defendant U.S.A., Defendant DOE C.B.P. AGENT 1-10, or Defendant DOE I.C.E. AGENT 1-10

---

[5] *See* 8 USCS §§ 1226, 1227, 1229, 1229a, 1229c, 1231 et al.; *see also* 8 U.S.C. 1229a(b)(4)(B).

respected any of Mr. Ovalle's due process rights, these agencies also would have been able to see that Mr. Ovalle was clearly a U.S. citizen and was, as he insisted, a native citizen born in California.

18.     Although his life was spared, the events that transpired over the course of the week of June 11, 2018 have caused Plaintiff to suffer severe emotional distress; after this ordeal, Plaintiff attempted to commit suicide, has been hospitalized, still suffers from trauma, and is still seeking treatment, all because Defendant U.S.A., Defendant DOE C.B.P. AGENT 1-10, or Defendant DOE I.C.E. AGENT 1-10 did not believe that he was a U.S. citizen and refused to believe his claims of U.S. citizenship. Based solely on racial profiling, discrimination, and predatory policies and practices, Defendant U.S.A., Defendant DOE C.B.P. AGENT 1-10, or Defendant DOE I.C.E. AGENT 1-10 deported Mr. Ovalle while he was and remains a U.S. citizen.

### FIRST CLAIM FOR RELIEF
#### FIFTH AMENDMENT TO THE U.S. CONSTITUTION
#### *BIVENS v. SIX UNKNOWN NAMED AGENTS OF FEDERAL BUREAU OF NARCOTICS*
#### AGAINST DEFENDANT DOE I.C.E. AGENTS 1-10 & DEFENDANT DOE C.B.P. AGENTS 1-10

19.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 18 of this Complaint.

20.     By illegally, arbitrarily, and capriciously deporting Mr. Ovalle, a United States citizen by birth, to Mexico, Defendants DOE AGENTS deprived Mr. Ovalle of his constitutional right to liberty without due process of law in violation of the Fifth Amendment to the United States Constitution. Defendants deported or caused Mr. Ovalle to be deported without reasonable basis or lawful authority.

21.     Defendants DOE AGENTS acted under color of law and acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations.

22.     Defendants DOE AGENTS' conduct violated clearly established constitutional or other rights of which Defendants knew, or of which a reasonable public official should have known.

23.     Defendants DOE AGENTS' actions, omissions, policies, patterns, practices, and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard for, or deliberate indifference to, Mr. Ovalle's personal safety, security, freedom, and civil and constitutional rights.

24.     These violations are compensable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S.388 (1971).  As a direct and proximate result of the unlawful actions of these Defendants DOE AGENTS, Mr. Ovalle has suffered economic damages and significant physical and emotional harm.

**SECOND CLAIM FOR RELIEF**
**FIFTH AMENDMENT TO THE U.S. CONSTITUTION**
***BIVENS V. SIX UNKNOWN NAMED AGENTS OF FEDERAL BUREAU OF NARCOTICS***
**AGAINST DEFENDANT DOE I.C.E. AGENTS 1-10 & DEFENDANT DOE C.B.P. AGENTS 1-10**

25.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 18 of this Complaint.

26.     By illegally deporting Mr. Ovalle to Mexico, Defendants DOE AGENTS deliberately and unconstitutionally discriminated against Mr. Ovalle on the basis of his race and ethnicity so as to deny him equal protection of the law in violation of the Fifth Amendment to the United States Constitution.

27.     Defendants DOE AGENTS acted under color of law and acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations.  Defendants DOE AGENTS acted with the intent or purpose to discriminate against Mr. Ovalle.

28.     Defendants DOE AGENTS' conduct violated clearly established constitutional or other rights of which Defendants knew, or of which a reasonable public official should have known.

29.     Defendants DOE AGENTS' actions, omissions, policies, patterns, practices, and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard for, or

deliberate indifference to, Mr. Ovalle's personal safety, security, freedom, and civil and constitutional rights.

30.     These violations are compensable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S.388 (1971).  As a direct and proximate result of the unlawful actions of these Defendants DOE AGENTS, Mr. Ovalle has suffered economic damages and significant physical and emotional harm.

### THIRD CLAIM FOR RELIEF
#### FIFTH AMENDMENT TO THE U.S. CONSTITUTION
#### DUE PROCESS
#### THE IMMIGRATION AND NATIONALITY ACT
#### SECTION 504 OF THE REHABILITATION ACT OF 1973
#### RELIEF TO PROTECT MENTALLY DISABLED PERSONS FROM ILLEGAL DEPORTATION
#### AGAINST DEFENDANT U.S.A., DEFENDANT DOE I.C.E. AGENTS 1-10, & DEFENDANT DOE C.B.P. AGENTS 1-10

31.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 18 of this Complaint.

32.     Mr. Ovalle qualifies as an "individual with a disability" under 29 U.S.C. § 705 and 42 U.S.C. § 12102 by virtue of his significant cognitive disorders and mental disabilities and apparent developmental disabilities.

33.     Section 504 of the Rehabilitation Act makes it unlawful to discriminate against an individual with a mental disability by denying that individual the benefits and protections afforded other non-disabled individuals.

34.     These Defendants had a duty under Section 504 of the Rehabilitation Act to promulgate, implement and maintain adequate policies and safeguards to protect against discrimination against individuals with mental and developmental disabilities in the provision of their services and to ensure that the personal and civil rights of individuals receiving services while in the custody of the federal government or its designated agents are protected.

35.     The Due Process Clause requires that all people, including individuals with mental

disabilities like Mr. Ovalle, receive fair hearings when placed in proceedings for removal from the United States.

36.     The Immigration and Nationality Act's requirement that all people in removal proceedings be afforded a reasonable opportunity to examine and present evidence and witnesses. *See* 8 U.S.C. 1229a(b)(4)(B).    This provision requires that unrepresented individuals who are not mentally competent to represent themselves be afforded appointed counsel in their immigration detention and removal proceedings, if they are unable to secure counsel by other means.  *Id.*

37.     These Defendants' failures to provide adequate and meaningful safeguards for people with mental disabilities in the immigration detention and court systems resulted in Mr. Ovalle's inability to receive a fair hearing and subsequent deportation.

38.     Defendants' failure to provide adequate and meaningful safeguards such as a right to counsel in immigration court for people with mental disabilities violates INA's requirement that respondents have a reasonable opportunity to present evidence in court.

39.     These Defendants' failure to provide intake and processing safeguards resulted in the unlawful and unconstitutional presumption that Mr. Ovalle was a noncitizen unlawfully in the United States, and ultimately led to his identification as a Mexican national subject to deportation.

40.     These Defendants' actions, omissions, policies, patterns, practices, and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard for, or deliberate indifference to, Mr. Ovalle's mental disability.

41.     These Defendants' refusal and failure to promulgate and implement policies and procedures to adequately identify and assess individuals with mental disabilities and to provide those individuals with sufficient legal guidance and protections while in federal custody and subject to interrogation and judicial or quasi-judicial proceedings constitute discrimination in violation of Section 504 of the Rehabilitation Act, resulting in Mr. Ovalle's unconstitutional and unlawful removal from the United

States.

42.    These violations are compensable under Section 505 of the Rehabilitation Act, and Mr. Ovalle is entitled to actual, compensatory, and punitive damages as a direct and proximate result of the unlawful actions of these Defendants, which caused Mr. Ovalle irreparable injury.

**FOURTH CLAIM FOR RELIEF**
**FIFTH AMENDMENT TO THE U.S. CONSTITUTION**
**DUE PROCESS**
**RELIEF TO PROTECT MENTALLY DISABLED PERSONS FROM ILLEGAL DEPORTATION AGAINST DEFENDANT U.S.A., DEFENDANT DOE I.C.E. AGENTS 1-10, & DEFENDANT DOE C.B.P. AGENTS 1-10**

43.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 18 of this Complaint.

44.    The Due Process Clause requires that citizens of the United States of America be afforded adequate safeguards against unlawful removal from the country, including procedures reasonably calculated to verify the citizenship and nationality of individuals in state or federal custody.

45.    These Defendants' failure to provide adequate procedures and meaningful safeguards to verify the citizenship of detainees during the intake, identification, and processing stages denied Mr. Ovalle his constitutional right to liberty without due process of law.  Such safeguards are especially warranted where, as here, the detainee expressly claims to be a U.S. citizen and government records are available to the custodial agency that would verify the citizenship of such individual.

46.    These Defendants' failure to provide intake and processing safeguards resulted in the unlawful and unconstitutional presumption that Mr. Ovalle was a non-citizen unlawfully in the United States, and ultimately led to his identification as a Mexican national subject to deportation.

47.    In doing so, Defendants violated federal statute and official policies of Defendant. According to U.S. Immigration and Customs Enforcement Policy 16.001.2, "As a matter of law, ICE cannot assert its civil immigration enforcement authority to arrest and/or detain a U.S.

citizen."[6]   This policy requires that ICE personnel to assess the potential U.S. citizenship of an individual encountered by ICE if the individual makes or has made a claim to U.S. citizenship, as well as when certain indicia of potential U.S. citizenship…are present in a case even if the individual does not affirmatively make a claim to U.S. citizenship."[7] This policy then requires "a factual examination and a legal analysis that requires a check of all available DHS data systems and any other reasonable means available to the officer."[8]   A memorandum then must be jointly submitted by the Enforcement and Removal Operations (ERO) or the Homeland Security Investigations (HIS) who conducted the factual examination with the assistance of the Office of Chief Counsel (OCC) for review, using a specific approved template.[9]   No such factual determination was known to have been conducted in this case and no records were apparently kept in accordance with the requirement that they be maintained within the PLAnet system.[10]

48.     As a result of the failure of Defendants to comply with this mandatory official policy, Mr. Ovalle was incorrectly labeled as a citizen of Mexico and he was deported in violation of federal law. *See* 8 USCS §§ 1226, 1227, 1229, 1229a, 1229c, 1231 et al.  Mr. Ovalle suffered irreparable injury as a result of Defendants' violation of Mr. Ovalle's constitutional rights under the Fifth Amendment to

## FIFTH CLAIM FOR RELIEF
### FOURTH AMENDMENT TO THE U.S. CONSTITUTION
### *BIVENS V. SIX UNKNOWN NAMED AGENTS OF FEDERAL BUREAU OF NARCOTICS*
### AGAINST DEFENDANT DOE I.C.E. AGENTS 1-10 & DEFENDANT DOE C.B.P. AGENTS 1-10

49.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 18 of this Complaint.

50.     Defendants DOE AGENTS intentionally detained Mr. Ovalle in violation of his

---

[6] *See* U.S. Immigration and Customs Enforcement Policy 16001.2, Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE, found at
https://www.ice.gov/sites/default/files/documents/Document/2017/16001.2.pdf
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*

constitutional right to be free from unreasonable seizures, as guaranteed by the Fourth Amendment to the United States Constitution.

51.     Defendants DOE AGENTS acted under color of law and acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations.

52.     Defendants DOE AGENTS' conduct violated clearly established constitutional or other rights of which Defendants knew, or of which a reasonable public official should have known. *See* 8 USCS §§ 1226, 1227, 1229, 1229a, 1229c, 1231 et al.

53.     Defendants DOE AGENTS' actions, omissions, policies, patterns, practices, and customs, as complained herein, were intentional and reckless and demonstrate a callous disregard for, or deliberate indifference to, Mr. Ovalle's personal safety, security, freedom, and civil and constitutional rights.

54.     These violations are compensable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S.388 (1971).  As a direct and proximate result of the unlawful actions of these Defendants DOE AGENTS, Mr. Ovalle has suffered economic damages and significant physical and emotional harm.

### SIXTH CLAIM FOR RELIEF
#### FALSE ARREST AND IMPRISONMENT
#### FEDERAL TORT CLAIMS ACT
#### AGAINST DEFENDANT UNITED STATES OF AMERICA

55.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 18 of this Complaint.

56.     Defendants DOE AGENTS intentionally and unlawfully deprived Mr. Ovalle of his liberty by holding Mr. Ovalle, a United States citizen, in C.B.P. and I.C.E. custody for an appreciable period of time and by physically expelling Mr. Ovalle from the national borders of the United States. Defendants DOE AGENTS were acting within the scope of their employment when they

committed these acts.

57.     Mr. Ovalle did not consent to his arrest, imprisonment, detention, or deportation.

58.     As a direct and proximate result of Defendants' conduct, Mr. Ovalle has suffered and continues to suffer damages in an amount to be proven at trial.

59.     Mr. Ovalle filed a claim with the Department of Homeland Security based on these injuries in accordance with the Federal Tort Claims Act.  The Department of Homeland Security denied this claim.

## SEVENTH CLAIM FOR RELIEF
### NEGLIGENCE
### FEDERAL TORT CLAIMS ACT
### AGAINST DEFENDANT UNITED STATES OF AMERICA

60.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 18 of this Complaint.

61.     Defendants DOE AGENTS breached their duty of reasonable care by negligently acting or failing to act in such a way that resulted in Mr. Ovalle's wrongful detention and deportation by C.B.P. and I.C.E., which these defendants knew or should have known posed a substantial risk of grave harm to Mr. Ovalle.

62.     Defendants DOE AGENTS were negligent in performing their duties and failed, neglected and/or refused to properly and fully discharge their responsibilities by, among other things:

   a. Failing to review readily available documentation in Mr. Ovalle's possession that showed that Mr. Ovalle was legally in the United States;

   b. Failing to review readily available documentation in Mr. Ovalle's possession that showed that Mr. Ovalle was born in California;

   c. Failing to investigate Mr. Ovalle's claims that he was born in California;

   d. Coercing Mr. Ovalle to sign documents while in the custody of Defendants that he failed to comprehend;

e.  Failing to provide Mr. Ovalle, who suffers from a mental illness and/or mental deficiencies, with assistance to (1) understand his rights, (2) read and understand the forms he was coerced to sign, and (3) protect him from coercive interrogation tactics;

f.  Creating and/or sanctioning policies, patterns, practices, and customs of detaining, interrogating, and deporting individuals based upon their race and/or ethnicity;

g.  Failing to adequately train and supervise personnel performing immigration duties;

h.  Holding and deporting a United States citizen;

i.  Failure to ensure U.S. Customs and Border Protection complies with federal law pursuant to 6 U.S.C. § 211 (c)(12);

j.  Failure to comply with standard operating procedures pursuant to 6 U.S.C. § 211 (c)(16);

k.  Failure to comply with standard operating procedures pursuant to 6 U.S.C. § 211 (c)(17);

l.  Failure to comply with statutory and regulatory authority provided by the Constitution of the United States of America;

m.  Failure to protect a Citizen of the United States from unreasonable search and seizure;

n.  Failure to provide a Citizen of the United States with due process;

o.  Failing to allow Plaintiff access to information on detainee rights at Border Patrol processing centers;

p.  Failing to allow Plaintiff the right to contract a representative of such individual's government for the purposes of United States treaty obligations;

q.  Negligent treatment of a citizen of the United States;

r.  Failing to confirm with Plaintiff's Texas identification card that Plaintiff was a citizen of the United States;

s.  Failing to provide Plaintiff an opportunity to provide proper documentation such as U.S. Passport or state identification to show Plaintiff was a citizen of the United States; and

t.   Other acts of negligence.

Defendants DOE AGENTS were acting within the scope of their employment when they committed these acts.

63.   As a direct and proximate result of Defendants' conduct, Mr. Ovalle has suffered and continue to suffer damages in an amount to be proven at trial.

64.   Mr. Ovalle filed a claim with the Department of Homeland Security based on these injuries in accordance with the Federal Tort Claims Act.  The Department of Homeland Security denied this claim.

## EIGHTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### FEDERAL TORT CLAIMS ACT
### AGAINST DEFENDANT UNITED STATES OF AMERICA

65.   Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 18 of this Complaint.

66.   Defendants DOE AGENTS' willful acts constitute outrageous conduct insofar as they were intended to cause Mr. Ovalle to be held in Defendants' custody, interrogated, and expelled from the national borders of the United States.

67.   Defendants DOE AGENTS intended to cause Mr. Ovalle emotional distress, and/or acted in reckless disregard of the likelihood of causing Mr. Ovalle emotional distress, in committing these acts.  Defendants DOE AGENTS were acting within the scope of their employment when they committed these acts.

68.   As a direct and proximate result of Defendants DOE AGENTS' acts, Mr. Ovalle suffered and continues to suffer severe mental anguish and emotional and physical distress.

69.   Mr. Ovalle has incurred and continues to incur medical expenses and other damages in an amount to be proven at trial.

## DAMAGES

70.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein. As a direct and proximate result of the acts and omissions of Defendants, Plaintiff JULIO CESAR OVALLE has suffered serious damages as a result of the occurrence including but not limited to the following:

    a.  For general damages against the Defendants, jointly and severally, in an amount to be proven at trial;

    b.  For special damages against the Defendants, jointly and severally, in an amount to be proven at trial;

    c.  For punitive and exemplary damages against Defendants DOE AGENTS, jointly and severally, in an amount to be proven at trial;

    d.  For reasonable costs, expenses, and attorneys' fees pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794a, and any other applicable state and federal law; and

    e.  For such other relief as the Court deems just, equitable, and proper.

## JURY DEMAND

71.     Plaintiff respectfully requests a trial by jury of the issues in this case.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff requests that the Defendants be cited to appear and answer, and that upon final trial, Plaintiff have judgment against Defendants for all relief requested, for pre-judgment interest, post judgment interest, for costs of this suit, and for such other and further relief, general and special, at law or in equity, to which Plaintiff is justly entitled.

Respectfully submitted,

**Espinoza Law Firm, PLLC**
10202 Heritage Blvd.
San Antonio, TX 78216
210.229.1300 t
210.229.1302 f
www.espinozafirm.com

**JAVIER ESPINOZA**
Texas Bar No. 24036534
javier@espinozafirm.com
e-service@espinozafirm.com
**LARA BROCK**
Texas Bar No. 24085872
lara@espinozafirm.com

**ATTORNEYS FOR PLAINTIFF**